UNITED STATES DISTRICT COURT
DISTRICT OF CONNECTICUT

| | |
|---|---|
| **United States of America** | : |
| | : |
| v. | : No. 3:19-cr-144-VLB-16 |
| | : |
| **Brandon Gineyard** | : |
| | : February 12, 2021 |
| | : |

**ORDER AND DECISION DENYING MOTION FOR COMPASSIONATE RELEASE**

Before the Court is the Defendant, Brandon Gineyard's, motion for sentence reduction under 18 U.S.C. § 3582(c)(1)(A)(i) and the First Step Act. Mot., Dkt. 431. Mr. Gineyard argues that extraordinary and compelling reasons warrant his request for a sentence reduction to time served due to the ongoing COVID-19 pandemic making his sentence more punitive than intended, Mr. Gineyard's risk of serious illness due to his medical condition of sickle cell trait and his heighted risk of diabetes, and the application 18 U.S.C. § 3553(a) factors. *Id.* The Government objects arguing that the sentencing factors strongly weigh against a sentence reduction, that Mr. Gineyard poses a danger to the community, and that Mr. Gineyard has not shown extraordinary and compelling reasons for his release. Opp., Dkt. 441.

I.      BACKGROUND

A. Case Background

On November 26, 2019, Mr. Gineyard entered into a plea agreement and pled guilty to conspiracy to distribute and possess with intent to distribute cocaine, in violation of 21 U.S.C. §§ 841(a)(1), 841(b)(1)(C), and 846. Plea Agreement, Dkt. 132.

1

Mr. Gineyard was referred over to the Office of Probation for a presentence interview and the Office of Probation drafted and filed a final presentence report ("PSR"). PSR, Dkt. 218. At sentencing, the Court adopted the facts stated in the PSR as its findings of fact after the parties both indicated they had no objections to the facts so stated therein.

As provided in greater detail in the PSR, Mr. Gineyard was a street level cocaine dealer. PSR at ¶¶ 8–13. During a 2-month period, law enforcement intercepted communications between Mr. Gineyard and one of his co-defendants, Marvin Lloyd, where Mr. Gineyard arranged to purchase seven ounces of cocaine. *Id.* Mr. Gineyard agreed that the "quantity of cocaine involved in [his] offense was at least 400 grams but less than 500 grams. *Id.* at ¶ 14.

Mr. Gineyard has a significant criminal history. In 2003, he was convicted of failure to appear in the first degree and two counts of unlawful restraint resulting in a four-year suspended sentence with a four-year period of probation. *Id.* at ¶¶ 32–33. His probation for this offense was revoked in 2004 and he was sentenced to serve two years in jail. *Id.* at ¶ 33. In 2008, he was convicted of disorderly conduct and sentenced to a 90-day suspended sentence with a one-year conditional discharge. *Id.* at ¶ 34. In 2009, he was convicted of assault in the first degree and unlawful restraint resulting in a one-year sentence with eight months to serve incarcerated and two years of probation. *Id.* at ¶ 35. He was later found to have violated probation but the sentence for this violation is unspecified. *Id.* The 2009 offense conduct involved violence against the mother of his child. *Id.* In 2011, Mr. Gineyard was convicted of disorderly conduct resulting in an

unconditional discharge.  *Id.* at ¶ 36.  The 2011 offense conduct included allegations of assault and theft from his then-girlfriend.  *Id.*  In February 2012, Mr. Gineyard was convicted of assault in the third degree and was sentenced to thirty days in jail.  *Id.* at ¶ 37.  In September 2012, Mr. Gineyard was convicted of assault in the third degree and sentenced to a one-year suspended sentence with eighteen months of probation.  *Id.* at ¶ 38.  The September 2012 offense conduct involved an assault on and theft from his ex-girlfriend.  *Id.*  In 2014, Mr. Gineyard was convicted of assault in the first degree and was sentenced to a one-year suspended sentence with eighteen months of probation.  *Id.* at ¶ 39.  He violated his probation in 2015 and the sentence for said violation is unspecified.  *Id.*  The 2014 offense conduct also involved violence against his then-girlfriend.  *Id.*  In 2018, Mr. Gineyard was convicted of resisting arrest and was sentenced to a one-year suspended sentence with two years conditional discharge.  *Id.* at ¶ 40.  The 2018 offense conduct also involved an assault on his child's mother.  *Id.*  He was deemed to have a criminal history category of IV for the purposes of the Sentencing Guidelines.  *Id.* at ¶ 41.

      The statutory maximum sentence that Mr. Gineyard faced for the underlying offense was twenty years.  *Id.* at ¶ 72.  The Guidelines range for the offense was calculated to be forty-six to fifty-seven months.  *Id.* at ¶ 73.

      On September 9, 2020, Mr. Gineyard was sentenced to forty-six months imprisonment to be followed by three years of supervised release.  Judgment, Dkt. 331.  At the time of his sentencing, he already served sixteen months on pre-trial detention.  PSR at 1 (showing a custodial status of detained since May 22, 2019).  The total amount of time served on the forty-six-month sentence is approximately

twenty months, which equates to approximately 43% of his sentence having been served.

B. Medical History

Mr. Gineyard states that he has "sickle cell trait" and is at risk of diabetes. Attached to his motion are medical records. The medical records show that in October 2020 he tested positive for COVID-19. Med. Records at PDF p.1. There are no other records showing whether he was symptomatic or not. The records also include a physical assessment from June 2020 showing he has "sickle cell trait" and is "in apparent good health." Id. at PDF p.2. Also in June 2020, blood test results show that he is at an "increased risk of diabetes." Id. at PDF p.5.

C. Prison Conditions and Exhaustion of Administrative Remedies

According to the BOP website, Mr. Gineyard is serving his term of incarceration at FCI Otisville in Otisville, New York.[1] The BOP reports that 7 inmates—equating to approximately 1% of the inmate population at FCI Otisville—and 10 staff members are infected with COVID-19 as of February 4, 2021.[2] The BOP has administered 43,544 doses of the COVID-19 vaccine to its staff and the inmates within its custody nationwide.[3]

---

[1] *Find an Inmate*, BOP.Gov, available at: https://www.bop.gov/inmateloc/ (last visited Feb. 4, 2021).
[2] *COVID-19*, BOP.Gov, available at: https://www.bop.gov/coronavirus/ (last visited Feb 10, 2021); *FCI Otisville*, BOP.Gov, available at: https://www.bop.gov/locations/institutions/otv/ (last visited Feb. 10, 2021) (showing 619 total inmates at FCI Otisville).
[3] *COVID-19*, BOP.Gov, available at: https://www.bop.gov/coronavirus/ (last visited Feb 10, 2021).

Mr. Gineyard attached a letter from the warden of Wyatt Detention Facility, who states that he does not have authority to grant compassionate release to detainees. Warden Letter, Dkt. 445. Mr. Gineyard has not provided a letter or other proof that he has been denied or requested compassionate release from the warden of FCI Otisville.

## II. LEGAL STANDARD

Under the First Step Act of 2018, federal prisoners may petition courts directly for reduction of their sentences, and judges may grant such requests if "extraordinary and compelling reasons" support reduction. *See* First Step Act of 2018, Section 603(b), Pub. L. 115- 391, 132 Stat. 5194 (2018) (amending 18 U.S.C. § 3582(c)(1)(A)(i)) ("First Step Act"). 18 U.S.C. § 3582(c)(1)(A) now authorizes a court to modify a term of imprisonment:

> upon motion of the Director of the Bureau of Prisons, or upon motion of the defendant after the defendant has fully exhausted all administrative rights to appeal a failure of the Bureau of Prisons to bring a motion on the defendant's behalf or the lapse of 30 days from the receipt of such a request by the warden of the defendant's facility, whichever is earlier.

Where this exhaustion requirement is met, a court may reduce the defendant's sentence if it finds that "extraordinary and compelling reasons warrant such a reduction" and "such a reduction is consistent with applicable policy statements issued by the Sentencing Commission." *Id.* The Court must also consider "the factors set forth in [18 U.S.C. §] 3553(a) to the extent that they are applicable." *Id.* "The defendant bears the burden of showing that she is entitled to a sentence reduction." *United States v. Gagne*, No. 3:18-CR-242 (VLB), 2020 WL 1640152, at *3 (D. Conn. Apr. 2, 2020).

5

### III. ANALYSIS

#### A. Exhaustion

Mr. Gineyard claims that he has satisfied any exhaustion requirement because he submitted a request for compassionate release that was denied. Memo. at 23. Mr. Gineyard does not cite to proof to support this claim. He has not attached a denial of compassionate release from the warden of FCI Otisville where he is in custody, only the warden from the facility where he had been in custody. He has not provided any reasoning or explanation as to why he has not requested compassionate release from the warden at FCI Otisville.

Therefore, the Court finds that Mr. Gineyard has not exhausted his administrative remedies and is not entitled to compassionate release.

#### B. Extraordinary and Compelling Reasons

Even though the Court has found that Mr. Gineyard has not satisfied the exhaustion requirement, for the sake of judicial economy and to avoid future motions based on the facts asserted in this motion, the Court will address whether Mr. Gineyard's motion sets forth "extraordinary and compelling reasons." He has not.

At Congress's direction, the U.S. Sentencing Commission promulgated guidance on the circumstances constituting "extraordinary and compelling" reasons. *See* 28 U.S.C. § 944(t); U.S.S.G. § 1B1.13. The U.S. Sentencing Commission has not updated its guidance since the enactment of the First Step Act. *See* U.S.S.G. § 1B1.1 (Nov. 1, 2018). The Application Notes to U.S.S.G. § 1B1.13

explain that a defendant's medical condition may constitute "extraordinary and compelling" circumstances when:

> (A) Medical Condition of the Defendant.--
>   (i) The defendant is suffering from a terminal illness (i.e., a serious and advanced illness with an end of life trajectory). A specific prognosis of life expectancy (i.e., a probability of death within a specific time period) is not required. Examples include metastatic solid-tumor cancer, amyotrophic lateral sclerosis (ALS), end-stage organ disease, and advanced dementia.
> [or]
>   (ii) The defendant is--
>     (I) suffering from a serious physical or medical condition,
>     (II) suffering from a serious functional or cognitive impairment, or
>     (III) experiencing deteriorating physical or mental health because of the aging process,
>   that substantially diminishes the ability of the defendant to provide self-care within the environment of a correctional facility and from which he or she is not expected to recover.

U.S.S.G. 1B1.13, Commentary Application Note 1(A). Any "other" "extraordinary and compelling reason" may also justify relief. *Id.* at Commentary Application Note 1(D).

"[T]he mere existence of COVID-19 in society and the possibility that it might spread to a particular prison alone cannot independently justify compassionate release." *United States v. Raia*, 954 F.3d 594, 597 (3d Cir. 2020). But this Court and others have recognized that an inmate's chronic medical condition that elevates his risk of becoming seriously ill from COVID-19 according to the CDC may be such an extraordinary and compelling reason. *See United States v. Sanchez*, No. 18-CR-00140-VLB-11, 2020 WL 1933815, at *5 (D. Conn. Apr. 22, 2020) (collecting cases).

Here, Mr. Gineyard argues that there are extraordinary and compelling reasons that warrant a reduction in his sentence because he is at an increased

7

risk of serious illness or death from COVID-19 should he be infected due to two medical conditions he has: sickle cell trait and his increased risk of diabetes. Neither of these two conditions have been recognized by the CDC as a condition that puts a person at risk of severe illness or death if infected with COVID-19.[4] While the CDC does recognize sickle cell disease as a condition that increases risk of illness and death, sickle cell trait is not the same thing.[5]   Also, while the CDC does recognize diabetes as a condition that increases risk of illness and death, Mr. Gineyard has not shown he is diabetic.

   Mr. Gineyard states that he is African American and then vaguely cites to news articles that state that African Americas are three times as likely to become infected as their white neighbors.  Mot. at 15.  Mr. Gineyard cites to a New York Times article, which did report that African Americans are three times as likely to be infected but did not contribute that infection rate based solely on the infected persons race.[6]  This article postulates the increased risk minorities face can be attributed to higher rates of minorities working during the pandemic, lack of access to healthy food options, and have a higher rate of comorbidities.  While Mr. Gineyard is incarcerated, some of these variables do not apply.  Further, as stated

---

[4] *See People with Certain Medical Conditions*, CDC.Gov, available at: https://www.cdc.gov/coronavirus/2019-ncov/need-extra-precautions/people-with-medical-conditions.html (last visited Feb. 4, 2021).
[5] *What is Sickle Cell Trait?*, CDC.Gov, available at: https://www.cdc.gov/ncbddd/sicklecell/traits.html (last visited Feb. 4, 2021).
[6] *The Fullest Look Yet at the Racial Inequality of Coronavirus*, THE NEW YORK TIMES (July 5, 2020), available at: https://www.nytimes.com/interactive/2020/07/05/us/coronavirus-latinos-african-americans-cdc-data.html.

above, he has not established that he has a comorbidity. The reference to his race as putting him at an increased risk of serious illness and death is unpersuasive.

Whether Mr. Gineyard is at risk of serious illness or death requires consideration of his risk of infection. As stated above, only 1% of inmates at FCI Otisville are infected with COVID-19 tending to show a low rate of infection. Further, the BOP has taken efforts to limit the spread of COVID-19 in their facilities.[7] The efforts include limiting social visits entirely or, where visitation is possible, mitigating the risk of spread by requiring the use of plexiglass, barriers, or social distancing, as well as requiring temperature checks, face coverings, and disinfecting surfaces. The BOP has modified operations to limit movement of inmates in the facility where possible. All new intakes are screened and tested; those who are symptomatic go into medical isolation where those who are not go into quarantine for at least 14 days. Only after an inmate tests negative through a PCR test will the inmate be allowed out of quarantine. In addition, temperature checks and COVID-19 screening are being conducted on staff, contractors, and other visitors. The fact that the BOP has been able to detect that Mr. Gineyard was infected with the virus lends support to the position that the BOP is testing inmates.

In addition to mitigating the spread, the BOP has begun vaccinating its staff members and inmates. The BOP has already begun administering the vaccine, having administered 43,544 vaccine doses as of February 10, 2021. While there is not an exact date on which Mr. Gineyard will receive the vaccine from the BOP, he

---

[7] *See BOP Modified Operations*, BOP.Gov, available at: https://www.bop.gov/coronavirus/covid19_status.jsp (last visited Jan. 8, 2021).

is likely to receive it well before the date on which he would if released. Eligible members of the general public in Connecticut are not expected to have access to the COVID-19 vaccine until the Summer and Fall of 2021.[8] Meaning, if Mr. Gineyard's true reason for seeking compassionate release is out of fear of reinfection, he is more likely to be vaccinated from the virus and protected against reinfection by not being released at this time.

Therefore, Mr. Gineyard has not met his burden to establish an extraordinary and compelling reason for compassionate release because he does not have any medical conditions that put him at an increased risk of serious illness or death, the facility he is at does not have a significant outbreak of COVID-19 infections, the BOP has taken proactive measures to mitigate the spread, and he is likely to receive a vaccine sooner while incarcerated than if released.

C. Section 3553(a) Factors

Even though the Court has found both that Mr. Gineyard has not exhausted his administrative remedies and has failed to establish extraordinary and compelling reasons warranting a sentence reduction, the Court will consider whether he would have been entitled to reduction under the § 3553(a) factors. He would not have.

Section 3553(a) requires the court in imposing a sentence that is sufficient, but not greater than necessary, to consider:

> (1) the nature and circumstances of the offense and the history and characteristics of the defendant;

---

[8] *See CT COVID-19 Vaccine: Phases and Eligibility*, CT.Gov, available at: https://portal.ct.gov/Coronavirus/COVID-19-Vaccination---Phases (last visited Feb. 10, 2021).

**(2) the need for the sentence imposed--**
    **(A) to reflect the seriousness of the offense, to promote respect for the law, and to provide just punishment for the offense;**
    **(B) to afford adequate deterrence to criminal conduct;**
    **(C) to protect the public from further crimes of the defendant; and**
    **(D) to provide the defendant with needed educational or vocational training, medical care, or other correctional treatment in the most effective manner;**
**(3) the kinds of sentences available;**
**(4) the kinds of sentence and the sentencing range established for--**
    **(A) the applicable category of offense committed by the applicable category of defendant as set forth in the guidelines--**
        **(i) issued by the Sentencing Commission pursuant to section 994(a)(1) of title 28, United States Code, subject to any amendments made to such guidelines by act of Congress (regardless of whether such amendments have yet to be incorporated by the Sentencing Commission into amendments issued under section 994(p) of title 28); and**
        **(ii) that, except as provided in section 3742(g), are in effect on the date the defendant is sentenced; or . . .**
**(5) any pertinent policy statement--**
    **(A) issued by the Sentencing Commission pursuant to section 994(a)(2) of title 28, United States Code, subject to any amendments made to such policy statement by act of Congress (regardless of whether such amendments have yet to be incorporated by the Sentencing Commission into amendments issued under section 994(p) of title 28); and**
    **(B) that, except as provided in section 3742(g), is in effect on the date the defendant is sentenced.**
**(6) the need to avoid unwarranted sentence disparities among defendants with similar records who have been found guilty of similar conduct; and**
**(7) the need to provide restitution to any victims of the offense.**

Here, Mr. Gineyard has a significant criminal history that includes several instances of violence and violence against women. He has been given lenient sentences that have not deterred his criminal conduct. There is no reason to believe that another lenient sentence would work to both rehabilitate Mr. Gineyard and protect the public from him.

The underlying offense conduct included the distribution of large quantities of cocaine. Mr. Gineyard was not addicted to or otherwise used cocaine. PSR at ¶

11

59–62. Rather he sold cocaine for personal and financial gain in violation of the law.

Contrary to his claim that his sentence is "excessively long"; Mot. at 20; his sentence was well below the statutory maximum of twenty years and at the lowest end of the Guidelines range of forty-six to fifty-seven months. When Mr. Gineyard was sentenced less than five months ago, during the COVID-19 pandemic, the Court considered the § 3553(a) factors under the conditions prevailing and sentenced him to forty-six months. Mr. Gineyard has pointed to no new evidence that would justify a modification of the sentence imposed.

Mr. Gineyard states that he provided reasons why he is not likely to recidivate, but nowhere in his motion are those reasons provided. Mot. at 23. He has not had time to attend programs which could have a transformative effect, nor does he point to an extraordinary transformative experience.

Mr. Gineyard argues that his sentence has been more punitive than intended. Mot. at 16. However, he was sentenced during the COVID-19 pandemic, at a time that the Court was acutely aware of the type of sentence he would be serving. The Court took those known conditions into consideration in sentencing him to the low end of the recommended Guideline range. Thus, his argument is in error.

Mr. Gineyard generally cites to the Eighth Amendment's prohibition on cruel and unusual punishment. His motion does not contain any factual claim that the BOP has in some way violated his Eighth Amendment right. Regardless, a motion for compassionate release is not the appropriate venue for raising such a challenge.

Mr. Gineyard argues that the goal of rehabilitation is not served while incarcerated during the COVID-19 pandemic because he does not have access to programs or treatments. Mot. at 20. The need for a sentence "to provide the defendant with needed educational or vocational training, medical care, or other correctional treatment in the most effective manner" is just one of the many § 3553(a) factors. While he may not currently have access to these programs, it is expected these programs will resume when the vaccine is widely available. As stated above, the vaccine has been made available to the BOP, which is currently in the process of administering it to its staff and inmates. Further the period of solitude and reflection, away from the temptations and influences of an inmate's prior life, presents an opportunity for self-rehabilitation through reading and other methods.

Therefore, even if Mr. Gineyard satisfied the exhaustion requirement and set forth extraordinary and compelling reasons warranting a sentence reduction, he would not be entitled to such reduction after application of the § 3553(a) factors.

IV. CONCLUSION

For the aforementioned reasons, the Court denies Mr. Gineyard's motion for compassionate release.

IT IS SO ORDERED.

                                                _____/s/_____
                                                Hon. Vanessa L. Bryant
                                                United States District Judge

Dated this day in Hartford, Connecticut: February 12, 2021